DUVIN COAL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22005. Promulgated April 25, 1929.

*Attilla Cox, Esq.*, and *E. J. Wells, Esq.*, for the petitioner.
*Bruce A. Lowe, Esq.*, for the respondent.

196

OPINION.

GREEN: There appears to be no controversy as to the annual rates of depreciation on machinery and equipment, steel rails, buildings, and lakes, since the respondent has admitted, and we so find, that the annual rate of depreciation on steel rails is 10 per cent. A controversy does arise, however, in respect to the computation of depreciation on additions made during the year. In support of its contention on this point, the petitioner submitted ledger sheets, which showed entries on various dates during the year of amounts included in the various accounts. In the case of machinery and equipment, buildings and steel rails, it is apparent from these accounts that the method employed by the Commissioner of allowing one-half the rate for a full year, which is equivalent to allowing the full rate for one-half year, works to the advantage of the petitioner and gives it a deduction in excess of that which would be allowed if depreciation were computed on each addition from the date entered. In the case of railroad construction, the advantage would be only slightly in favor of the petitioner, but this would not result in a material advantage, since the largest expenditure for the year was $8,045.08, made on April 30. In the case of railroad supplies, the expenditures were made in January and February, 1922.

The ledger sheets merely show when the expenditures were made. They do not show when the machinery and equipment, buildings, rails or supplies were actually installed, erected or consumed. Under ordinary circumstances, depreciation does not start until the equipment has actually been installed and is ready for operation. It is admitted by the petitioner that operations did not start until May, 1922, and up to that time the petitioner was not engaged in actual business operations, having mined no coal. No information has

been submitted on this point, other than that operations started in May, 1922. We are, therefore, of the opinion that petitioner has failed to show that the Commissioner erred in computing depreciation on additions made during the year 1922. All that the statute requires is that the Commissioner make a reasonable allowance, and the record in this proceeding does not establish that he has not done this.

There remains the question of the proper rate to be used in determining the exhaustion of capital expended for shafts, development, railroad, and right of way. Petitioner originally, and even as late as 1924, considered that the rate should be based upon a life of 25 years. The respondent, from the data submitted by the petitioner, determined that the rate should be based upon a life of 37 years. The petitioner now maintains that, in view of the information available in 1927, the life should be about 17 years.

The witnesses for the petitioner have established that these assets, when in use and properly maintained, do not exhaust appreciably due to lapse of time, but exhaust only because of the fact that the mine exhausts. It is perfectly apparent that the exhaustion of the mine is not necessarily in equal annual amounts. Its exhaustion, during use, bears a direct relation to the mineral extracted each year. It is apparent to us that the exhaustion of the capital invested in these assets should be computed on a tonnage basis in the same manner that deduction for depletion is computed. The rate per ton should be based upon a reserve as of January 1, 1922, of 7,700,000 tons.

*Judgment will be entered under Rule 50.*